849 So.2d 566 (2003)
STATE of Louisiana
v.
Jarbie BROWN.
No. 2002 KA 2231.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*567 Matthew Hagen, Ellen Daigle Doskey, Assistant District Attorneys, Houma, for State of Louisiana.
Gwendolyn K. Brown, Baton Rouge, for Defendant-Appellant Jarbie Brown.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
Defendant, Jarbie Brown, was charged by bill of information with theft over $500.00 and aggravated flight from an officer, in violation of La. R.S. 14:67 B(1) and 108.1 C, respectively. He pled not guilty and, after trial by a six-member jury, was found guilty as charged on both counts. For the theft conviction, defendant received a sentence of imprisonment at hard labor for five years. For the aggravated flight from an officer conviction, defendant was sentenced to imprisonment at hard labor for a period of two years. The trial judge ordered the sentences to run consecutively.
Defendant has appealed, assigning the following specifications of error:
1. The trial court erred in imposing excessive sentences.
2. The trial court erred in failing to properly comply with the requirements of C.Cr.P. art. 894.1.
3. The trial court erred in denying the motion to reconsider sentence.
For the following reasons, we affirm defendant's conviction and sentence for the crime of theft. However, because we have found patent error with respect to the composition of the jury that tried defendant for the crime of aggravated flight from an officer, we reverse that conviction, vacate the sentence, and remand.

FACTS
On October 23, 2001, Raymond Beasley discovered that someone had stolen the Chevrolet Cheyenne truck he was using for business purposes. He called his office, Beasley Pest Control Service, and reported the theft. Office personnel contacted the police and gave them a description *568 of the vehicle. At the time of the theft, the truck had a value in excess of $15,000.00.
Officer Nicholas Pepper with the Houma Police Department was on patrol on the morning in question. He received a radio transmission concerning the stolen truck and proceeded to the area where the truck was last seen. Officer Pepper spotted the vehicle as it made a left turn onto Hobson Street in North Houma. He tried to get closer, but the driver of the truck took evasive action, making a sudden right turn. Officer Pepper radioed headquarters with the license number of the truck and advised that he was planning to make a traffic stop. The officer turned on his lights and siren. At this point, the driver accelerated sharply and made an erratic turn at a high rate of speed onto another residential street. As Officer Pepper gave chase, defendant ignored stoplights, ran through intersections, and continued to make high-speed sharp turns. According to Officer Pepper, defendant was often traveling as fast as 70 mph in 25 mph speed zones. At times, defendant drove in the wrong lane headed for oncoming traffic, causing cars to stop and pull over out of his way. He also drove at high rates of speed on the shoulders of roads to get around slow moving traffic. Defendant drove around a partial roadblock before another police vehicle joined the chase. He sideswiped two parked vehicles, sped past a school headed against traffic, and eventually rear-ended another car as he attempted to get away. As defendant tried to make a final sharp turn at high speed, he lost control of the vehicle and crashed into a house.
Throughout the chase, Officer Pepper maintained visual contact with the vehicle. When defendant bailed out of the truck, Officer Pepper got a close look at him. At one point, defendant was less than one foot away. He and Officer Eric Ricker pursued defendant on foot, but he got away. Both officers identified defendant in court at trial. According to Officer Ricker, he knew defendant by name at the time of the incident.
After losing defendant in a foot chase, Officer Ricker proceeded to a residence where he believed defendant might be hiding. He was given consent to search the residence. In one bedroom, Officer Ricker found what he recognized as the clothing the driver of the stolen truck had been wearing during the high-speed chase. After a further search, they found defendant hiding in the closet of another bedroom. At the conclusion of trial, defendant was found guilty as charged.

ASSIGNMENTS OF ERROR NUMBERS 1-3
In these related assignments of error, defendant complains regarding the consecutive sentences imposed by the trial judge. Because we have identified a patent error that requires us to reverse and remand the conviction for aggravated flight from an officer, we will only review the errors assigned as they apply to the theft conviction.
Defendant contends the trial court abused its discretion by imposing an excessive sentence for his theft conviction of imprisonment at hard labor for a period of five years. In addition, he argues that the trial judge did not adequately comply with La.Code Crim. P. art. 894.1, that he should not have imposed consecutive sentences, and that he should have granted defendant's motion to reconsider his sentence. We do not agree.[1]
*569 The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. La.Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1 Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1 Cir.), writ denied, 493 So.2d 1218 (La.1986).
The trial court has wide, although not unbridled, discretion in the imposition of a sentence within statutory limits. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence will be determined to be excessive if it is grossly disproportionate to the crime, or is nothing more than the needless imposition of pain and suffering. The determination turns upon the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate that it shocks our sense of justice. State v. Waguespack, 589 So.2d 1079, 1086 (La.App. 1 Cir.1991), writ denied, 596 So.2d 209 (La. 1992).
A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. Waguespack, 589 So.2d at 1086. A sentence imposed within the statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. Sepulvado, 367 So.2d at 767; State v. Latiolais, 563 So.2d 469, 473 (La. App. 1 Cir.1990).
Specifically with respect to the theft conviction, the trial judge observed that defendant had only recently been released from juvenile detention for a similar crime. Based on defendant's past record, the trial judge imposed a five-year sentence for his conviction of theft of property valued over $500.00.
After considering the circumstances of the theft offense and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentence imposed. The sentence is well within the statutorily permitted range for the crime committed. Defendant made no attempt to bring to the court's attention any factors in mitigation. Although the trial judge in this case did not specifically refer to Article 894.1, we are satisfied, after a thorough review of the record, that there is no cause for a remand for re-sentencing. Accordingly, for all of the reasons stated hereinabove, we cannot find that the trial judge manifestly abused his discretion with respect to the sentence imposed in this case for defendant's theft conviction. Nor can we find that he erred in denying defendant's motion to reconsider the sentence imposed. Defendant's assignments of error are without merit.

PATENT ERROR
Louisiana Code of Criminal Procedure article 920, entitled "Scope of appellate review", provides that "The following matters and no others shall be considered on appeal: ... (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (Emphasis added.) Louisiana Code of Criminal Procedure article 5, entitled "Mandatory and permissive language", provides, in pertinent part, that "The word `shall' is mandatory." (Emphasis added.) This language is clear and unambiguous. Its application is not limited *570 to errors favorable or unfavorable to either the State or a criminal defendant. As set forth in La. Civ.Code art. 9, "[w]hen a law is clear and unambiguous ... the law shall be applied as written." State v. Paoli, XXXX-XXXX, p. 6 (La.App. 1 Cir. 4/11/02), 818 So.2d 795, 799 (en banc), writ denied, 2002-2137 (La.2/21/03), 837 So.2d 628. As mandated by Article 920, a patent error review has been made of the record on appeal, and a patent error has been found.
The minutes and record reflect that defendant in this case was tried by a six-member jury. Joinder of two or more offenses in a single bill of information is allowed by La.Code Crim. P. art. 493, provided that the offenses are triable by the same mode of trial. In this case, defendant was charged in Count 1 with theft, a crime punishable by imprisonment with or without hard labor. A six-person jury was required for that offense. See La. Const. art. I, § 17; La. R.S. 14:67 B(1); La.Code Crim. P. art. 782 A. Defendant was charged in Count 2 with aggravated flight from an officer. The crime of aggravated flight from an officer provides for punishment as follows at La. R.S. 14:108.1 E: Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than two years. [Emphasis added.]
A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. La. Const. art. I, § 17; La.Code Crim. P. art. 782 A. In our view, the statute defining the crime of aggravated flight from an officer presents such a case and requires a jury of twelve. An error in the number of jurors trying a defendant constitutes patent error. State v. Smith, 367 So.2d 857, 858 (La.1979) (per curiam). A verdict returned by a jury composed of either more or less than the correct number of jurors is null. Smith, 367 So.2d at 858.
Although we have been unable to locate jurisprudence specifically addressing the number of jurors required for trial of the offense of aggravated flight from an officer, the current Louisiana Criminal Code defines many crimes using the same type of penalty language found in La. R.S. 14:108.1 E.[2] Decisions addressing the proper *571 number of jurors to be empanelled in cases involving crimes with the same type of penalty provision as La. R.S. 14:108.1 E are highly persuasive.[3] In the early decision of State v. Hayes, 161 La. 963, 109 So. 778 (1926), the Louisiana Supreme Court reviewed a case in which defendant was convicted of assault by willful shooting. At the time of the 1898 offense, the crime was defined at 1870 La. R.S. § 792, as amended by 1896 La. Acts No. 59, § 1. The penalty provision of the statute stipulated that whosoever shall assault another by willfully shooting at him ... "shall on conviction be imprisoned at hard labor not more than twenty years." The Louisiana Constitution of 1898, like our present Constitution, provided that offenses necessarily punishable at hard labor were required to be tried before a jury of twelve. Hayes, 109 So. at 780. In Hayes, defendant was not tried by a jury of twelve. In reversing defendant's conviction, the court explained:
At the time the offense is charged to have been committed (August 15, 1898), the crime of assault by willfully shooting at was an absolute felony, punishable by imprisonment at hard labor in the penitentiary, and not otherwise. Section 792, R.S., as amended by Act 59 of 1896.
Under the Constitution of 1898, which was in force at the time of the alleged offense, all absolute felonies were triable by a jury of 12.
....
The conclusion therefore is inevitable that the defendant was tried by an incompetent tribunal. The court was without power to sentence the defendant otherwise than as provided by Act 59 of 1896; that is to say, by imprisonment in the penitentiary.
From which it follows that the defendant could not be tried otherwise than as provided for the trial of offenses punishable by imprisonment at hard labor which means imprisonment in the penitentiaryby a jury of 12, and not by a jury of 5.
Hayes, 109 So. at 780.
A series of early cases concerning the crime of manslaughter also demonstrates that a crime carrying a penalty of imprisonment at hard labor for a period of "not more than" a specific number of years must be tried before a jury of twelve.[4] In *572 State v. Porter, 176 La. 673, 146 So. 465, 466 (1933), the Louisiana Supreme Court interpreted the manslaughter statute as defining a crime necessarily punishable at hard labor, such that a defendant charged with manslaughter must be tried by a jury of twelve. The court expressed its view that failure to try a defendant charged with manslaughter before a twelve person jury constituted a non-waivable error patent on the face of the record. Porter, 146 So. at 466-467. The same conclusion was reached in State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942), wherein defendant alleged that his conviction for manslaughter before a jury of five was a nullity. The court noted:
If the defendant had been charged with the crime of manslaughter, the punishment for which is necessarily imprisonment at hard labor, he should have been tried by a jury of 12, and, therefore, the record, which shows that he was tried by a jury of five, discloses a patent error.
Vinzant, 7 So.2d at 920 (citation omitted).[5] In State v. Bertrand, 167 La. 373, 119 So. 261 (1928), the court found manslaughter to be an offense "necessarily" punishable at hard labor in the context of determining the proper number of peremptory challenges available to the state.[6]
More recently, the Louisiana Supreme Court commented on the number of jurors required to try a defendant on a charge of distribution of marijuana. In State v. Rabbas, 278 So.2d 45, 46 (La.1973), the court considered a prosecution pursuant to La. R.S. 40:971 B(2) (as amended by La. Acts No. 457 of 1970), which at the time provided for a penalty of imprisonment at hard labor for "not more than" ten years or payment of a fine of not more than $15,000.00, or both. The court found that punishment assessed as imprisonment would "necessarily be at hard labor." However, because the statute gave the trial judge the discretion to impose a fine instead, the case was triable only before a jury of five. Rabbas, 278 So.2d at 46. The language used by the court confirms our view that a penalty provision calling for imprisonment at hard labor for "not more than" a fixed number of years constitutes "punishment necessarily at hard labor" for purposes of determining the appropriate number of jurors constitutionally mandated. We expressed the same view in State v. Cutrera, 558 So.2d 611 n. 1 (La.App. 1 Cir.1990), commenting that a charge for distribution of Dilaudid was required to be tried before a jury of twelve where the statute provided a penalty of imprisonment at hard labor for "not more than" ten years.[7]
Following the interpretation of the Louisiana Supreme Court of penalty language in other statutes that is the same or substantially similar to the penalty language found in La. R.S. 14:108.1 E, and our own interpretation of such language, we conclude that aggravated flight from an officer is an offense necessarily punishable at *573 hard labor requiring a jury of twelve.[8] Since defendant was tried by a jury of six for this offense, we must reverse the conviction and sentence.
Although we reverse defendant's conviction and vacate the sentence for the offense of aggravated flight from an officer, we need not disturb defendant's conviction and sentence for theft. There is no question that the theft offense was tried before the correct number of jurors. Defendant never objected to the misjoinder. Nor did he file a motion to quash the bill of information on this basis. As the two offenses were so closely related, evidence of either one could likely have been offered as a part of the res gestae of the other. See State v. Bychurch, 97-2846, pp. 3-4 (La.App. 1 Cir. 11/6/98), 722 So.2d 1054, 1055, and cases cited therein. The officers in this case, entirely apart from attempting to establish the crime of aggravated flight from an officer, could have testified regarding their efforts to apprehend defendant, who was driving the stolen truck at the time. The fact that defendant was under visual observation during the chase of the stolen vehicle and the fact that he was known to Officer Ricker when he bailed out of the truck would have been material to his positive identification as the perpetrator of the theft. In Bychurch, we vacated one of two sentences imposed for crimes improperly joined and tried before a jury of six, remanding the matter to the district court for a new trial of the offense that should have been tried before a jury of twelve.[9]
Accordingly, the theft conviction and sentence are affirmed. The conviction for aggravated flight from an officer is reversed, the sentence for same is vacated, *574 and this matter is remanded to the district court for a new trial.
THEFT CONVICTION AND SENTENCE AFFIRMED; AGGRAVATED FLIGHT FROM AN OFFICER CONVICTION REVERSED AND SENTENCE VACATED; REMANDED FOR A NEW TRIAL.
NOTES
[1] Defendant filed a motion to reconsider the sentence imposed, which was denied on February 13, 2002.
[2] See e.g., La. R.S. 14:95.2 (imprisonment at hard labor for not more than five years for carrying a firearm in specified locations, such as school property); La. R.S. 14:95.8 B(3) (imprisonment at hard labor for not more than five years for a third and subsequent offense of illegal possession of a handgun by a juvenile); La. R.S. 14:78 (imprisonment at hard labor for not more than fifteen years for the crime of incest between an ascendant and descendant or between a brother and sister); La. R.S. 14:114 (imprisonment at hard labor for not more than ten years for misprision of treason); La. R.S. 14:115 (imprisonment at hard labor for not more than ten years for the crime of anarchy); La. R.S. 14:128.1 (imprisonment at hard labor for not more than ten or not more than thirty years, depending on the manner of commission for the crime of terrorism); La. R.S. 14:129 (imprisonment at hard labor for not more than ninety-nine years for jury tampering where the offense being tried is punishable by death or life imprisonment); La. R.S. 14:26 B (imprisonment at hard labor for not more than thirty years for criminal conspiracy to commit a crime punishable by death or life imprisonment); La. R.S. 14:31 (imprisonment at hard labor for not more than forty years for manslaughter); La. R.S. 14:32.6 (imprisonment at hard labor for not more than fifteen years for the crime of first degree feticide); La. R.S. 14:34.6 (imprisonment at hard labor for not more than five years for disarming a peace officer); La. R.S. 14:54.1 (imprisonment at hard labor for not more than twenty years for communication of false information of a planned arson); La. R.S. 14:54.5 (imprisonment at hard labor for not more than five years for possession of a fake explosive device); La. R.S. 14:110.1 (imprisonment at hard labor for not more than two years where an offender jumps bail set for a felony offense). None of these offenses make imprisonment without hard labor or a fine an alternative sentencing option.
[3] We have reviewed the legislative history surrounding the enactment of the provisions of La. R.S. 14:108.1 defining the crime of aggravated flight from an officer and the penalty for commission of that offense. As originally proposed, the offense would have required imprisonment at hard labor for not more than ten years. Prior to passage, the proposal was amended to stipulate for a maximum five year penalty and finally for a maximum two year penalty. See Minutes of the Senate Committee on Judiciary Section, April 8, 1997, relative to Senate Bill 52; Minutes of the House Committee on Administration of Criminal Justice, May 28, 1997, relative to Senate Bill 52. No comment was made during discussion of the bill on the number of jurors that would be required to try this offense. However, it is clear that the senators understood that this crime would constitute a felony.
[4] The Louisiana Revised Statutes of 1870 provided that an offender convicted of manslaughter be imprisoned at hard labor, not exceeding twenty years. 1870 La. R.S. § 786. The Louisiana Revised Statutes of 1915 carried forward the identical provision. 1915 La. R.S. § 1609. The Louisiana Criminal Code of 1942 increased the penalty slightly, stipulating that whoever commits manslaughter shall be imprisoned at hard labor "for not more than" twenty-one years. 1942 La. Acts No. 43, § 1, art. 31. La. Const. of 1921 art. 7, § 41 provided, as does our Constitution today, that all cases in which punishment is necessarily at hard labor shall be tried by a jury of twelve.
[5] In both the Porter and Vinzant cases, the court ultimately found that defendant had been charged with a different offense, such that reversal of the conviction was not required.
[6] Louisiana Code of Criminal Procedure article 799 provides for twelve peremptory challenges in a case necessarily punishable by hard labor.
[7] Our discussion in Cutrera of distribution of Dilaudid was disapproved in State ex rel. Marks v. Thompson, 596 So.2d 193, 194 (La. 1992) (per curiam) as an incorrect statement of the law with respect to that crime. However, our reasoning with respect to the number of jurors required is nevertheless instructive.
[8] We are aware that a number of criminal statutes impose a fine of "not more than" a certain fee. In certain cases, it has been held that this language does not impose any statutory minimum fee, so that if a trial judge elects not to impose a fine, patent error is not recognized. See State v. Legett, XXXX-XXXX, p. 3 (La.App. 4 Cir. 5/22/02), 819 So.2d 1104, 1106; State v. Course, XXXX-XXXX, p. 6 (La. App. 4 Cir. 1/30/02), 809 So.2d 488, 492. We are not persuaded that these cases are relevant to an interpretation of whether a statute necessarily mandates imprisonment at hard labor for purposes of determining the appropriate number of jurors required pursuant to the Louisiana Constitution and La.Code Crim. P. art. 782 A. We similarly find inapposite cases discussing the sentencing range for crimes with penalties of imprisonment at hard labor for "not more than" a certain number of years as being zero to the maximum number mentioned. This language has been used in cases dealing with the obligation of a trial judge to review the full sentencing range allowable under La.Code Crim. P. art. 894.1. See e.g., State v. Everett, 432 So.2d 250, 251 (La.1983). It has also been used in cases where there has been an attempt to harmonize statutes calling for differing penalties. State v. Piazza, 596 So.2d 817, 819-821 (La.1992). And it has been used when the issue is whether the court must instruct a jury regarding mandatory sentences. State v. Henderson, 31,986, p. 10 (La.App. 2 Cir. 8/18/99), 740 So.2d 240, 247. We do not view references to a range of sentences starting at zero in these contexts as authority for the proposition that crimes with penalties described in the terms used in La. R.S. 14:108.1 are not "necessarily" punishable at hard labor. Were we to so hold, it would mean that many serious crimes such as manslaughter, conspiracy to commit murder, and terrorism would be triable only to a jury of six. Moreover, were we to so hold, based on a sentence of zero years, defendant herein would have had no constitutional right to any type of jury trial.
[9] We note the amendment of La. Const. art. I, § 17, which added subsection B providing for the joinder of certain offenses. See 1997 La. Acts No. 1502, § 1, effective November 1998. See also La.Code Crim. P. art. 493.2. However, the new provision does not solve the issue we face in this case because it only allows the joinder of such offenses where there is a twelve-person jury. As noted above, this case was tried before a six-person jury.